IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

CONAGRA FOODS, INC.,

                Plaintiff,          Case No. 3:07 CV 602

  -vs-

                                          MEMORANDUM OPINION

UNITED FOODS AND COMMERCIAL
WORKERS, LOCAL UNION 911,

                Defendant.

KATZ, J.

This matter is before the Court on Local 911 United Food & Commercial Workers Union's ("Defendant") motion for summary judgment (Doc. 17) and ConAgra Foods, Inc.'s ("Plaintiff") cross-motion for summary judgment (Doc. 15). This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I. Background**

Defendant represents employees and bargaining unit members at Plaintiff's pudding factory. On September 21, 2005, union member Denise Webb filed a grievance alleging that Plaintiff refused to permit her to return to work, essentially terminating her or laying her off, after a period of time off for recovery from an injury and plant closure. On December 4, 2006 the arbitrator issued an award sustaining the grievance. On February 28, 2007, Plaintiff filed a civil action in this Court in the form of a motion to vacate the arbitrator's award.

After working at ConAgra for 23 years, Webb, a packaging machine operator, had ankle surgery in early 2004. She took time off work from April, 2004 until June 29, 2005, when her doctor released her to work without restrictions. The pudding plant where she worked was shut

down from June 30, 2005 until July 8, 2005. On July 10, 2005, back at work, Webb experienced shortness of breath at the end of her shift. Her supervisor advised her to check with the safety coordinator, but Webb was unable to reach the safety coordinator. On her next work day, July 13, 2005, Webb was sent to a local hospital where a doctor determined that she had a moderate obstructive airway disease and that she was in a deconditioned state. The doctor determined that Webb could perform the basic functions of the packaging machine operator position, but that she would have difficulty performing the physical requirements of a packaging operator. ConAgra reviewed this information and considered its options, including placing her in a case packer position, which Defendant and the arbitrator considered compatible with her restrictions. On September 16, 2005, ConAgra placed Webb on layoff, claiming that no position could be found that matched her restrictions.

An arbitrator heard the case on September 12, 2006. Webb testified that the only change in her breathing problems from before April 2004 until late June 2005 was due to a decline in her fitness level during her recovery from ankle surgery. She also testified that on July 10, 2005, she experienced breathing problems only due to a long and difficult day on the line - nine hours in extremely hot and humid conditions during which the line experienced technical problems. The company argued that Webb had a serious medical condition, and, given the restrictions and advice of the doctor, putting her in another position would pose a physical risk to her.

Section 3.1 of the collective bargaining agreement ("CBA") provides the following:

**3.1** There shall be no discrimination by the Company or the Union against any applicant or employee who is a disabled veteran or Vietnam-era veteran, or because of age, race, color, religion, sex, national origin, physical or mental handicap, or because of membership or non-membership in the Union to the extent prescribed by law.

2

J.A. at 11.

The arbitrator found that Plaintiff's failure to allow Webb to return and perform the limited job assignment of case packer constituted discrimination based on a perceived physical handicap in violation of Section 3.1 of the CBA. The arbitrator sustained the grievance, ordering Webb be returned to work and made whole.

**II. Standard of Review and Discussion**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

More specifically, before this Court can make a determination on the merits of the parties' arguments with regard to interpretation of the CBA, the Court must first decide whether to defer to the arbitrator's decision. Generally, a court must give the decisions of arbitrators a high degree of deference with regard to the merits of the matter, *United Steel Workers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593 (1960), playing a limited role when a losing party asks the court to vacate an award, *United Paper Workers International Union v. Misco, Inc.*, 484 U.S. 29, 31 (1987). The Sixth Circuit has recently laid out the parameters of a court's role in reviewing an arbitrator's decision. Federal courts shall ensure that a challenged arbitration award grew out of a legitimate process, that the prevailing party did not obtain the decision through fraud, that the arbitrator did not suffer from a conflict of interest or exercise dishonesty, and that the arbitration award did not merely reflect the arbitrator's own notion of industrial justice. *Michigan Family Resources, Inc. v. Service Employees International Union Local 517M*, 475 F.3d 746, 752 (6th

Cir. 2007). A permissible award is one that "draws its essence from the contract" and an impermissible award is one that "simply reflect[s] the arbitrator's own notion[] of industrial justice." *Id.* (citing *Misco*, 484 U.S. at 38, and *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)). The inquiry is "based on whether 'the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority.'" *Id.* The Circuit, sitting en banc, framed a court's inquiry and identified the parameters of that approach as follows:

> [The court] will consider the questions of "procedural aberration" that *Misco* and *Garvey* identify. *Misco*, 484 U.S. at 40 n. 10, 108 S.Ct. 364. Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"? So long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made "serious," "improvident" or "silly" errors in resolving the merits of the dispute.
>
> These relatively straightforward inquiries, we acknowledge, mask a harder question: What role, if any, still remains for a court to consider the arbitrator's resolution of the merits in determining whether he was "arguably construing" the contract? The union, supported by the national AFL-CIO, argues that the court's view of the merits has nothing to do with this process-driven question. So long as the arbitrator purported to construe the contract, that is the end of the matter. [Michigan Family Resources, Inc.] argues by contrast that federal courts always must consider the merits of a dispute to determine whether the arbitrator was arguably construing the contract.
>
> We respectfully disagree with both of them. The [Supreme] Court's repeated insistence that the federal courts must tolerate "serious" arbitral errors suggests that judicial consideration of the merits of a dispute is the rare exception, not the rule. At the same time, we cannot ignore the specter that an arbitration decision could be so "ignor[ant]" of the contract's "plain language," *Misco*, 484 U.S. at 38, 108 S.Ct. 364, as to make implausible any contention that the arbitrator was construing the contract. An interpretation of a contract thus could be "so untethered to" the terms of the agreement, to borrow a phrase from our Circuit Justice, *Garvey*, 532 U.S. at 512, 121 S.Ct. 1724 (Stevens, J., dissenting), that it would cast doubt on whether the arbitrator indeed was engaged in interpretation. Such an exception of course is reserved for the rare case. For in most cases, it will suffice to enforce the award that the arbitrator appeared to be engaged in interpretation, and if there is doubt we will

4

> presume that the arbitrator was doing just that. *Cf. Warrior & Gulf*, 363 U.S. at 582-83, 80 S.Ct. 1347 ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.").

*Michigan Family Resources*, 475 F.3d at 753 (Sutton, J., writing for en banc court).

Plaintiff complains that the arbitrator misapplied disability discrimination law to Webb's situation, that ConAgra cannot be ordered to return Webb to work because she does not qualify as "disabled," and that assigning an employee to certain tasks is not within the arbitrator's authority under the CBA. Plaintiff's arguments invite the Court to go too far in examining the merits of the parties' arguments before the arbitrator. Those arguments take issue with judgments made by the arbitrator with regard to law, the CBA, evidence, testimony, and credibility. The Court will not go as far as to examine these issues because the arbitrator was at least arguably construing the terms of the CBA when making his decision and award. Specifically, Section 3.1 of the CBA provides that neither the company nor the union shall discriminate on the basis of an employee's handicap. The arbitrator considered briefs from both parties, and Defendant represents that its brief addressed the law of discrimination based on a perceived handicap in the arbitration context. Plaintiff's arguments on that subject should have been before the arbitrator as well, because the parties, in the CBA, agreed to settle disputes relating to provisions of the CBA through the process of arbitration. Plaintiff may not complain to this Court that the arbitrator misapplied discrimination law, because the parties consented, in Section 3.1 of the CBA, to the authority of the arbitrator to apply the law of discrimination.

Even if the Court were to consider the arbitrator's interpretation to be a "serious. . . error", "improvident", or "silly", the Court is without authority to invalidate the award because the

5

arbitrator "appeared to be engaged in interpretation" of the language of the CBA. *Michigan Family Resources*, 475 F.3d at 753. Applying the expanded deference to arbitrators set out by the Supreme Court and explained by the Sixth Circuit, the arbitrator was acting under the authority of the CBA, and there is no allegation of conflict of interest or dishonesty. The Court herein makes no determination as to whether the arbitration award was just, smart, "silly", or wise. Rather, the Court finds that the arbitrator arguably appeared to be construing the CBA, and the arbitrator was chosen by a determinate procedure and lacked dishonesty or a conflict of interest. Having made that determination, under *Michigan Family Resources*, supra, the Court is bound to uphold the arbitrator's award.[1]

### III. Conclusion

Defendant's motion for summary judgment (Doc. 17) is hereby granted. Plaintiff's cross-motion for summary judgment (Doc. 15) is hereby denied.

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE

---

[1] As a contrast to this matter, the Court directs the parties' attention to another matter before this Court, a judgment in which was issued the same day as this order in this matter. In *Liberty Nursing Center of Willard, Inc. v. Local 911*, Case No. 07-CV-00390-DAK, a different arbitrator issued an award relating to the CBA's dental and vision insurance prices provision. The contract provided for certain prices for certain classes of employees, such as $14.00 for a single employee, but the arbitrator ordered the company to charge approximately $10.00 for a single employee. The arbitrator's decision was not even arguably based on any other language in the CBA, and she went beyond her authority in issuing a decision that was completely textually incompatible with the express numerical specificity of the CBA. This case and that one fall on opposite sides of the line of deference drawn in *Michigan Family Resources*, supra.